UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TIM J. PEDERSON, et al., | CASE NO. C17-5310 BHS |
| Plaintiffs, | ORDER |
| v. | |
| UNITED STATES DEPARTMENT OF THE TREASURY, et al., | |
| Defendants. | |

THIS MATTER is before the Court on Defendant United States Department of the Treasury's Motion to Enforce Settlement Agreement, Dkt. 23. The case was closed with a judgment in the Government's favor in May 2018. Dkt. 22.

Plaintiffs Tim and Debbie Pederson sued in state court to quite title in property, a portion of which was owned by Tim's deceased brother, Keith Pederson. The government asserted federal income tax liens on Keith's interest in the property, but it did not assert any claims against Tim or Debbie Pederson in its Answer in this case. Dkts. 7 and 15. The Government moved for Judgment on the Pleadings, Dkt. 16, arguing that none of the Pedersons' state law contract theories could plausibly "unseat" its tax liens:

ORDER - 1

>     Plaintiffs' attempt to unseat these liens in this suit is invalid because they
>     have stated no federal law, as they must, to alter the effect of the federal tax
>     liens. The United States is therefore entitled to judgment as a matter of law
>     under Fed. R. Civ. P. 12(c).

Dkt. 16 at 7–8.

The Pedersons did not respond to the Government's motion, and the Court granted it on January 8, 2018.[1] Dkt. 17. Four months later, the remaining parties stipulated to a dismissal with prejudice of all other claims and parties. The stipulation did "not apply to the claims or causes of action brought by the plaintiffs against the defendant, United States of America, acting through the Department of Treasury, Internal Revenue Service, which has already obtained judgment on the pleadings, entered by the Court on January 1, 2018." Dkt. 20 at 2. The Court entered a judgment and closed the case on May 22, 2018. Dkt. 22.

The Government now contends that it and the Pedersons had previously entered into a written settlement agreement on January 5, 2018, requiring the plaintiffs to sell the property and pay 1/9 of the "net proceeds" to the Government in satisfaction of the tax liens. The agreement contains just five terms:

1. Plaintiffs agree that the United States has a lien interest in the property.

2. Plaintiffs agree to sell the property within six months of this date in an arms-length transaction, the terms of which must be approved in writing by the United States Department of Justice prior to closing. Plaintiffs agree to a payment of 1/9 of the net proceeds of the sale after closing costs, to the United States at the time of sale of the property from the proceeds thereof.

---

[1] The Court entered its Order January 8, 2018, just days after the parties' settlement agreement, without knowing about it. Neither party suggested that the Order should be vacated or informed the Court that they had settled.

   3. After receipt of the payment, the United States will issue certificates discharging the property from its tax liens at issue in the matter.

   4. Upon acceptance of these terms by the United States, the parties will file a notice of settlement and the United States shall withdraw its motion for judgment on the pleadings pending execution of the settlement terms.

   5. The parties will bear their own costs and fees.

Dkt. 24-2 at 1. The Government contends that the property was sold (in August 2020), but the Government's share of the "net proceeds" was $8,961.94 less than the government claims it should have been. *See* Dkt. 24-3. It asks the Court to enforce the settlement agreement and enter a (second) judgment in its favor, based on an unpled, affirmative breach of contract claim against the Pedersons.

The Pedersons oppose the motion, pointing out that the case has been closed for five years, and that the Government never did the things it agreed to do in paragraph 4, above. It did not withdraw its motion for a judgment on the pleadings, and instead obtained a judgment. It did not inform the Court of the settlement, and the case was dismissed and closed. The Pedersons also assert that the Court does not have jurisdiction over the dispute because the Government has never asserted or served an affirmative claim against them. Dkt. 28 at 8.

The Government responds that its "claims against the Pedersons" were not dismissed but instead specifically excluded from the parties' stipulated order of dismissal, Dkt. 32 at 6, and it asserts that "the United States has a Judgment against the Pedersons." *Id*. (citing Dkt. 22). But the stipulation excluded the Pedersons' claims because they had

ORDER - 3

already been dismissed, and Dkt. 22 is not a judgment on an affirmative claim against the Pedersons; there has been no such claim in this case. And, even if it was, the settlement agreement the Government seeks to enforce specifically provided that the Government would *not* obtain such a judgment. Dkt. 24-2 at 1.

Instead, the Government's prior motion argued that the Pedersons' state law "reformation" claim could not defeat its tax liens on the property as a matter of law. It obtained the judgment it sought, dismissing the Pedersons' claims against it, but it did not assert any claims[2] against the plaintiffs. It prevailed only on its argument that the plaintiffs claims could not unseat its liens on the property.

The property sold almost three years ago. The settlement agreement provided that the government would get notice of the sale, approve of it in writing, and facilitate it by removing the liens at closing. These provisions were presumably put in place to avoid the dispute that the Government now asks this Court to resolve. But the record is silent on how the sale closed without the Government's input on the amounts it received to remove the liens.

The Government acknowledges that pursuing the alleged shortfall in a new action would not be economical, but it asserts that, if this motion is not successful, it "will pursue such claims if necessary." Dkt. 32 at 9.

---

[2] The Government contends that the "Little Tucker Act," 28 U.S.C. § 1346(a)(2), does not apply in this case because it concerns contract disputes "where the United States is a defendant." Dkt. 32 at 8 n3. The Government has always been a defendant, and not a plaintiff, in this case.

ORDER - 4

1       The Court agrees that it would not be productive to litigate a $8,900 breach-of-contract claim in federal court. But it cannot conclude that the solution is to award the Government summary judgment on a claim it has not ever asserted in a case that has been closed for five years. The Government's effort is procedurally improper. It has not sought to re-open the case, nor to amend its answer to assert a breach of contract claim, and it argues only implicitly that it is entitled to summary judgment on its new claim. Nor has the government met its summary judgment burden of establishing there are no material issues of fact and that it is entitled to judgment as a matter of law.

      It is not clear in the context of the sale what the parties intended by the phrase "1/9 of the net proceeds," or that the Government's obligations under the agreement—including withdrawing its motion for a judgment on the pleadings, notifying the Court of the settlement, and approving of the sale terms in advance—were material. If they were, it appears that they were breached. In any event, it seems indisputable that the agreement was not performed on either side precisely as the parties agreed in 2018. It is not clear to the Court how the property's sale was closed without the Government's participation or at least its knowledge, or why the Government waited more than two years after that closing to bring this motion.

      None of these issues can be resolved in the context of this motion, in this case. The Motion to Enforce the Settlement Agreement is **DENIED**. The case remains closed.

      IT IS SO ORDERED.

//

//

1  Dated this 8th day of June, 2023.

BENJAMIN H. SETTLE
United States District Judge